IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| J.L. LANE LENDING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:20CV340-ECM |
| | ) | (wo) |
| WELLS FARGO BANK NATIONAL ASSOCIATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is a motion to dismiss filed by Defendant Wells Fargo Bank, National Association. (Doc. 5).

The Plaintiff, J.L. Lane Lending, LLC, originally filed a complaint in the Circuit Court of Montgomery County, Alabama.  The case was removed to federal court by the Defendant on the basis of diversity subject-matter jurisdiction.  No motion to remand was filed.  Based on the allegations of the complaint, the sole member of the Plaintiff and the Defendant are completely diverse (doc. 1-1), and more than $75,000 is in controversy.  Therefore, the Court has subject-matter jurisdiction, pursuant to 28 U.S.C. § 1332.

In the complaint, the Plaintiff brings claims for fraud (count one), negligence (count two), and conversion (count three).  In response to the complaint, the Defendant filed a motion to dismiss, followed by an answer.

After initial briefing on the motion to dismiss, because the Plaintiff had not had an opportunity to respond to new arguments and supplemental authority provided by the

Defendant, the Court gave the Plaintiff additional time in which to file a response in opposition to the motion to dismiss.

Upon consideration of the complaint and the briefs of the parties, and for the reasons that follow, the motion to dismiss the complaint (doc. 5) is due to be GRANTED, but the Plaintiff will be given an opportunity to file an amended complaint.

## I.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## II. FACTS

The facts as alleged in the complaint are as follows:

The Plaintiff planned to close a real estate loan and had been communicating with Kristi C. Fuller ("Fuller") about that closing. The Plaintiff received an email communication with wire transfer instructions, including the account information for an account at Defendant Wells Fargo Bank and listing the beneficiary as "Kristi C. Fuller Law LLC-Real Estate IOLTA." (Doc. 1-1 ¶10).

The complaint alleges that because the wire transfer expressly identified "Kristi C. Fuller—RE IOLTA," the Defendant was notified of the intended beneficiary's name and that the intended account was an IOLTA account. (*Id.* ¶27).

The Plaintiff initiated a wire transfer of $100,000 at its bank to the account number at the Defendant bank and identified the beneficiary as Kristi C. Fuller-RE IOLTA. Fuller did not receive the funds from the wire transfer. The money had been placed in an account that was not owned by Fuller, but by a third-party unknown to the Plaintiff. The money was moved out of the account the same day.

The complaint alleges that prior to this incident, the Defendant had become aware that it had been used to perpetrate fraudulent wire transfers, but did nothing to protect against such fraud. The complaint identifies alternative theories by first alleging that if "the account into which Wells Fargo deposited Plaintiff's funds was an IOLTA account affiliated with Ms. Fuller's name, then Wells Fargo allowed an imposter to open an IOLTA account at its facilities, failed to observe any customer identification protocol, and fraudulently represented that account as an authentic account belonging to Ms. Fuller." (*Id.*

3

¶30). The complaint goes on to allege that if "the account into which Wells Fargo deposited Plaintiff s funds was not an IOLTA account and not owned by Ms. Fuller, then Wells Fargo knowingly deposited Plaintiff s funds into an account that clearly contradicted Plaintiff's intended recipient." (*Id.* ¶31). According to the Plaintiff's complaint, "[s]imple and quick steps, such as adhering to customer identification in opening accounts and/or checking the intended beneficiary name with an account owner and/or checking the intended account type should have allowed Wells Fargo to easily prevent this fraud." (*Id.* ¶32).

### III.   DISCUSSION

The Defendant has moved to dismiss all of the Plaintiff's claims, arguing that the Plaintiff's common-law claims are displaced by Alabama statutory law, and that, even if they are not, the Plaintiff has failed to state a claim for fraud, negligence, or conversion.

Title 7 of the Alabama Code codifies Article 4A of the Uniform Commercial Code ("U.C.C."), which "governs a specialized method of payment referred to in the Article as a funds transfer but also commonly referred to in the commercial community as a wholesale wire transfer." ALA. CODE § 7-4A-10, Official Comments. "[I]f the situation made the basis of a dispute is addressed in Article 4A, then the provisions of Article 4A provide the exclusive rights and remedies of the parties involved." *Fitts v. AmSouth Bank*, 917 So. 2d 818, 824 (Ala. 2005). As recently explained by another district court in this circuit, "§ 7-4A-207 describes the rights and obligations arising when a payment order 'identifies the beneficiary both by name and by a[ ] ... bank account number[,] and the name and number identify different persons.' § 7-4A-207(b)." *Simple Helix, LLC v. Relus Techs., LLC*, 2020 WL 5984024, at *5 (N.D. Ala. Oct. 8, 2020). Accordingly, a plaintiff

only may assert a common law claim based upon a funds transfer if the claim (1) arises from circumstances not contemplated in Article 4A; or (2) represents rights and obligations not contrary to those set forth in Article 4A. *Id.* at *11.

Section 7-4A-207 provides as follows:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
> (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

"The rights and obligations set forth in § 7-4A-207 vary depending upon the beneficiary's bank's knowledge that a payment order misdescribes the beneficiary." 2020 WL 5984024, at *5.

The Official Comments to the statute provide as follows: " 'Know' is defined in Section 1-201(25) to mean actual knowledge, and Section 1-201(27) states rules for determining when an organization has knowledge of information received by the organization." ALA. CODE § 7-4A-207.

Section 7-4A-201 (27) defines "security procedure" as

5

> a procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication. A security procedure may require the use of algorithms or other codes, identifying words or numbers, encryption, callback procedures, or similar security devices. Comparison of a signature on a payment order or communication with an authorized specimen signature of the customer is not by itself a security procedure.

ALA. CODE § 7-4A-201 (27).  Bearing mind these statutory provisions, the Court now turns to each of the Plaintiff's claims.

  A.  Negligence

As earlier noted, the allegations of the complaint are that the Plaintiff initiated a wire transfer following instructions which had provided an account number and listed the beneficiary of the account as "Kristi C. Fuller Law LLC- Real Estate IOLTA." (Doc. 1-1 ¶¶10-11).   The complaint further alleges that Wells Fargo "was notified" of the beneficiary's name and that the intended account was an IOLTA account. (*Id.* ¶27).  The complaint posits that "[s]imple and quick steps, such as adhering to customer identification in opening accounts and/or checking the intended beneficiary name with an account owner and/or checking the intended account type should have allowed Wells Fargo to easily prevent this fraud." (*Id.* ¶33)

  The Plaintiff in this case does not identify cases which would support a conclusion that its negligence claim is not displaced by statute.  *See C & N Contractors, Inc. v. Community Bancshares, Inc.*, 646 So. 2d 1357, 1362 (Ala.1994) (holding that judgment is

appropriate where U.C.C. provisions "appear[ ] to displace the plaintiffs' action for common law negligence or wantonness, and the plaintiffs have cited no authority to establish that it does not displace their claims."). Negligence in failing to note a discrepancy between an account number and a beneficiary arises from circumstances which are specifically contemplated in Article 4A; in fact, that article precludes relief under those circumstances. ALA. CODE § 7-4A-207(b)(1).

The Plaintiff's response to the preemption argument in the motion to dismiss appears to be that because the Plaintiff has adequately alleged "actual knowledge" on the part of the Defendant, ALA. CODE § 7-4A-207(b)(1) does not govern this case. The Plaintiff's "actual knowledge" allegation, however, does not remove its negligence claim from the U.C.C., because a claim based on "actual knowledge" also is contemplated by the U.C.C. in § 7-4A-207(b)(2). In other words, while the Plaintiff has pointed to purported allegations of "actual knowledge" in an attempt to show that ALA. CODE § 7-4A-207(b)(1) does not apply, because action taken with actual knowledge is contemplated in § 7-4A-207 (b)(2), negligence claims arising from both an unknown discrepancy and from "actual knowledge" fall within, and are displaced by, Article 4A. *Fitts*, 917 So. 2d at 824. Accordingly, the negligence claim asserted here is preempted and due to be dismissed.

 B. Fraud

The Defendant has argued both that the fraud claim by the Plaintiff is preempted by the U.C.C. and that the claim is inadequately pleaded under FED. R. CIV. P. 9(b).

The Eleventh Circuit has addressed the question of preemption of a state-law claim in the context of a case where money was transferred by wire to a party that knew or should

7

have known that the funds were obtained illegally. *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267 (11th Cir. 2003). The court explained that "a provision of state law that requires a receiving or beneficiary bank to disgorge funds that it knew or should have known were obtained illegally when it accepted a wire transfer is not inconsistent with the goals or provisions of Article 4A." *Id.* at 1275. The court further reasoned that interpreting Article 4A in a manner that would allow a beneficiary bank to accept funds when it knows or should know that they were fraudulently obtained would improperly allow banks to use Article 4A as a shield for fraudulent activity. *Id.* at 1276.

In this case, the Plaintiff alleges that the Defendant represented, "by not properly verifying and authenticating identity before opening the account," that the account the Plaintiff wired the funds to was an authentic account opened by Kristi C. Fuller. (Doc. 1-1 ¶37-8). At other points in the complaint, the Plaintiff alleges that the Defendant failed to adequately monitor account openings and to adhere to customer identification protocols. (*Id.* ¶20).

Allegations regarding a failure to follow security protocols may be sufficient to bring at least an aspect of the fraud claim within the U.C.C. *See* ALA. CODE § 7-4A-207, Official Comments; ALA. CODE § 7-4A-201. Another district court in this circuit has reasoned that if alleged fraud centers on a wire transfer, the fraud claim is preempted. *Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 2020 WL 7480345, at *5 (N.D. Ga. Dec. 18, 2020). That case, however, specifically noted that the facts alleged there did not involve "improper account openings," *id.*, whereas, in this case, account openings are identified in the complaint. It may be, therefore, that the fraudulent activity alleged in this case falls

outside of the Alabama commercial statutes. Because multiple theories are alleged, however, a more definite statement of the fraud claim is needed before the Court can adequately analyze this claim.

Furthermore, in pleading a fraud claim under state law in federal court, the Plaintiff must comply with the heightened pleading requirements of FED. R. CIV. P. 9(b). *See Barrett v. Scutieri*, 281 Fed. Appx. 952, 953 (11th Cir. 2008) (requiring claimant to set forth elements of fraud under state law but to plead with particularity under federal law). The fraud claim in this case does not meet that standard. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)(setting out the requirements of Rule 9(b) that plaintiffs must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud). Because the original complaint was filed in state court and removed to federal court, the Court will grant the motion to dismiss as to the fraud claim, but will allow the Plaintiff additional time in which to re-plead a fraud claim, should the Plaintiff choose to do so.

    C. Conversion

The Defendant argues that the conversion claim asserted in this case is preempted by the U.C.C. The Defendant also argues that because the funds are not sufficiently identifiable, the Defendant was never the owner of the funds, and there is no allegation that it exercised dominion over the funds, the Plaintiff has failed to state a claim of conversion.

The elements of a conversion claim are a "wrongful taking of specific property and an assumption of ownership or dominion over the separate and identifiable property of another." *McGee v. McGee*, 91 So. 3d 659, 667 (Ala. 2012)(citation omitted). Generally, there can be no claim for conversion of money unless the money is specific money capable of identification. *Gray v. Liberty Ins. Co.*, 623 So. 2d 1156, 1160 (Ala. 1993).

In *Simple Helix,* 2020 WL 5984024*,* the court applied Alabama law to a conversion claim in the context of a wire transfer. The court concluded that the conversion claim was not preempted because the bank knew the payment order misdescribed the beneficiary and knowingly paid a person not entitled to the originator's payment, but reasoned that the plaintiff could not establish a conversion claim on the facts because cash was at issue, not a specific check, and the defendant did not retain the funds for its own use. *Id.* at *16. This Court finds the same is true here in that there is no allegation that specific money capable of identification was transferred or that the Defendant retained funds for its own use. Therefore, the motion to dismiss is due to be GRANTED as to the conversion claim for failure to state a claim even if that claim is not preempted.

## IV.   CONCLUSION

For the reasons discussed, it is ORDERED as follows:

1. The Motion to Dismiss is GRANTED and the negligence and conversion claims are DISMISSED with prejudice, but the fraud claim is DISMISSED without prejudice.

2. The Plaintiff is given until **June 25, 2021** to file a new, amended complaint, if the Plaintiff chooses to do so and can do so within the requirements of FED. R.

CIV. P. 11. Any amended complaint filed must be complete unto itself, and not incorporate any previous complaint by reference, consistent with M.D. Ala. Local Rule 15.1.

3. Any re-pleaded fraud claim should comply with FED. R. CIV. P. 9(b) as discussed in this Memorandum Opinion and Order.

Done this 11th day of June, 2021.

    /s/ Emily C. Marks  
EMILY C. MARKS  
CHIEF UNITED STATES DISTRICT JUDGE